'Curia, per
Johnson, J.
Before I proceed to consider the leading questions in this case, I propose to. dispose of that class of yrords which go to charge the plaintiff with cutting off the'tail, or swabbing defendant’s, horse. These are clearly not actionable in themselves, because they do not impute to plaintiff any crime which would have subjected him to legal punishment. At common law a civil action, would lie for that injury,'and it is insisted that under the Act of 1789, P. L. 486^ it is an offence for which an indictment would lie. That Act provides that if any person, shall be convicted of wilfully and knowingly mark- *247 ingi branding, or disfiguring any horse, mare, colt, (fee., cow, bull, steer, (fee., he shall forfeit £20 for each, and in case of non-payment shall be publicly whipped. The same Act also provides against stealing of horses, cattle, sheep, goats, and for marking, branding, or disfiguring them. At that time the raising of stock was a general object of pursuit in the country, and constituted a considerable portion of the revenue of the citizens. The stock of each was distinguished from the other by their natural or such artificial brands and marks as the owner, might think proper to place upon them, and to prevent the alteration of these marks for the purpose of defrauding the owner, was evidently the object of this provision of the Act. Notv there is certainly nothing in the mere cutting off the hair of a horse’s tail that is of itself calculated so to disfigure him that the owner would not know him again ; nor was there anything in the manner of speaking the words calculated to. convey the idea that defendant imputed that intention to the plaintiff. They therefore import no crime for which plaintiff could have been indicted.
In considering the other questions which have been raised it will be necessary to premise that this is a motion for a nonsuit only, and upon a question put by the court to the counsel, he has declined to accept a new trial, although the court might be of opinion that there were grounds to authorize it. It is therefore unnecessary to euquire whether the witness, W. K. Clowuey, was or was not properly permitted to give his own construction to the words spoken, and whether the judge on circuit misdirected the jury as to matters of law or fact, for these have never been allowed as grounds of nonsuit, but for a new trial. The. case is then resolved into the questions : 1st. Whether the words laid in the declaration are actionable, and 2d. Whether they are sufficently proved. The colloquium on the first count in the declaration states : “ That a certain stable, being one of the out-houses on the premises and within the curtilage of the dwelling-house situated thereon belonging to one Joseph Reed and others, and then occupied by one James Norris, had been burnt down in the night time, in which was consumed a horse belonging to *248 the said Joseph (the defendant,) and that in a conversation concerning the burning of the said stables, <fcc., the defendant said to the plaintiff, ‘ Mr. Gage, some time ago Mr. Norris’ stables were burnt, and I lost my horse, and public? opinion says you was the author of it, and what public opinion says I believe to be right” (inuendo that he was guilty of arson.) The words were proved precisely as laid ; and, when connected with the colloquium, amount in terms to the common law definition of arson — the burning of an out-house within the curtilage of the mansion-house — and, so understood, it is not denied that the words are actionable: but it is insisted that the proof does not sustain the averment that the stable was within the curtil-age of the dwelling-house. The. proof is that the stable burnt was situated on the same lot with the dwelling-house in the village of Union, at the distance of about sixty yards from it, and was separated from it by a common fence. I have not been able to ascertain that there is any precise rule by which to distinguish between out-houses that are or are not under the same protection which the law affords to dwelling-houses considered apart from them. Hawkins says that the dwelling-house and the out-buildings, as barns and stables, adjoining thereto, and also barns full of corn, whether they be adjoining to the house or not, are the subject of arson. 1 Hawk. P. C. ch. 38. East says that it extends not only to the dwelling-house, but to all out-houses that are parcel thereof, though not adjoining thereto, East P. C. 1020, and refers to his chapter on the subject of burglary, lb. 492, as being identical in this respect to the crime of arson, and as furnishing illustrations of the subject. He then observes that the term mentioned “ not only includes the dwelling-house, but also the out-houses, such as barns, stables, cow-houses, dairy-houses, and the like, if they be parcel of the messuage, though they be not under the same roof or joining contiguous to it.” But it is difficult to reconcile the cases which he puts by way of illustration. In one.place it was held to be burglary to break a back-house eight or nine yards distant from the dwelling-house and united to it only by a paling. Whilst in Garland's case the breaking of an out-house used in common *249 with the dwelling-house, and separated only by a passage of eight feet, was held not to be burglary, on the ground that it was not within the same curtilage or common fence and so, in Eggington’s case, lb. 494, it was held not tO' be burglary to break into a centre building in which trade-was carried on, although it was under the same roof with the dwelling-house, because there was no internal communication between them. But in Graydon’s case the breaking of a barn was held to be burglary, although it was. separated from the dwelling-house by a stable, a cottage: and cow-house, because it was under the same roof. Ib.. 493. In Ginns’ case, 1 N. and McC. 585, Judge Nott remarks that to constitute an out-house parcel of a mansion-house it must be some how connected with or contributory to it, as a kitchen or smoke-house, or such other as is-usually considered as a necessary appendage to a dwelling-house. There is then great difficulty in prescribing any rule by which we will be able to distinguish between such houses as do and such as do not come under the protection of the dwelling-house, and in case of difficulty we are from necessity obliged to resort to principle. In Ginns’ case Judge Nott remarks that the laws against burglary — and the same reason applies to those against arson — were designed as a personal protection to the owner and his family — an immunity afforded to a man’s dwelling or mansion-house, which is considered as his castle and a sanctuary to all who are within it. Without such a protection the repose of a man would be liable to be disturbed by the burglar : he might be despoiled of his goods and his life perilled by a rencounter with the midnight robber, and so by the still more desperate deeds of the incendiary. I apprehend, therefore, that whatever act is in itself calculated to produce these consequences, consummates the offence. Out-houses, such as kitchens, stables, barns, tfec., are indispensably necessary to our comfort and convenience, and renders it necessary that they should, even in country places, be located contiguous to the dwelling-house ; and, in towns and villages, they must, in general, be so located, for the want of space; and when an out-house, thus necessary to a dwelling-house, is so situated that the burning of it *250 ■would probably endanger the dwelling-house, whether i$ be under the same roof or within the same common fence, all the evils intended to be guarded against are involved to the same extent as if the dwelling-house itself had been set on fire, and for that reason the same protection ought to be extended to them ; and that appears to me to be the only true rule. If the building set on fire is one appropriated to ordinary domestic uses, and is situated so near to the dwelling-house as probably to endanger it, then it is arson to burn it, and not otherwise. Whether the house charged to have been burned in this case was so situated or not, is a question of fact, which the court are not competent to determine, and one indeed on which the jury have not passed, because it was not submitted to them ; and although that might be good on a motion for a new trial, it clearly is not for a nonsuit.
There is another ground on which this motion must be refused. The words charged impute another crime to the plaintiff. The killing of the defendant’s horse in the night time — burning him in the stable. The statute 22 and 23 Car. 2, ch. 7, P. L. 80, made of force in this State, makes it felony for any one, in the night time, maliciously, unlawfully, and willingly to kill any horse, (fee., and to avoid the sentence of death allows the offender to elect transportation for seven years. In Kirkpatrick's case, 2 Brev. Dig. 35, note, it became a question whether, as transportation was not authorized by our laws, the offender could be punished at all; and, although it was not directly decided, Judge Brevard indicates very clearly his own opinion that the offender was notwithstanding punishable ; and I recollect also the case of one Donevant, who was convicted, before the late Mr. Justice Waties, at Union Court-House, for maliciously killing a horse in the night time. He was in doubt as to that question, and reserved it for the consideration of the Constitutional Court, and by the advice of all the Judges, Donevant was sentenced to fine and imprisonment. The rule laid down in Brooker vs. Coffin, 5 Johns. R. 191, is that words are in themselves actionable if they impute to the plaintiff a crime involving moral turpitude, or subject him to infamous punishment; and it will not be *251 questioned that moral turpitude enters into the offence of maliciously killing a horse in the night time. It may be said that the burning of the horse does not support the in-uendo that plaintiff was guilty of arson. The office of an inuendo is to explain what was said before, and which without it would be uncertain, and is useless where the sense and meaning is perfect without it, and may be regarded as surplusage. 1 Ch. PI. 383. If then the colloquium and the words spoken are taken together, they contain a plain and direct charge against the plaintiff of killing the defendant’s horse in the night time, and in the absence of any thing else the law implies that it was wilfully and maliciously done, thus making the charge of the of-fence complete without the aid of the inuendo.
Motion dismissed.
O’Neall, J. concurred.